Jeffrey Mitchell, Esq. (SBN: 188751)
jeff@mitchelllawsf.com
Nathaniel M. Leeds, Esq. (SBN: 246138)
nathaniel@mitchelllawsf.com
MITCHELL LEEDS, LLP
290 7th Avenue
San Francisco, CA 94118
Tel: (415) 702-9928
Fax: (415) 276-9099

Attorneys for Plaintiffs,
DARIO CERAGIOLI, deceased by and through ELIZABETH CERAGIOLI, as Successor in Interest, ELIZABETH CERAGIOLI in her personal capacity, MARY CERAGIOLI, ANTHONY CERAGIOLI, and JOSHUA CERAGIOLI

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIO CERAGIOLI, deceased by and through ELIZABETH CERAGIOLI, as Successor in Interest, ELIZABETH CERAGIOLI in her personal capacity, MARY CERAGIOLI, ANTHONY CERAGIOLI, and JOSHUA CERAGIOLI, <br><br> Plaintiffs, <br><br> v. <br><br> BUTTE COUNTY, a municipal corporation; Sheriff KORY L. HONEA, individually and in his official capacity as Sheriff of BUTTE COUNTY; CASEY O'HERN, individually and in his official capacity as Deputy Sheriff of BUTTE COUNTY; JOSEPH GEORGE, individually and in his official capacity as Deputy Sheriff of BUTTE COUNTY; CRYSTAL COMER; TANYA ATKINSON; PAMELA JOHANSEN; and WELLPATH, LLC; WELLPATH MANAGEMENT, Inc.; WELLPATH PARTNERS, LLC; and DOES 1 through 60, inclusive, <br><br> Defendants. | NO. <br><br> **PLAINTIFFS' COMPLAINT FOR:** <br><br> 1) **VIOLATION OF 42 USC § 1983: FOURTH AND FOURTEENTH AMENDMENTS** <br><br> 2) **VIOLATION OF 42 USC § 1983: FOURTEEN AMENDMENT - SUPERVISOR LIABILITY** <br><br> 3) **VIOLATION OF CALIFORNIA GOVERNMENT CODE § 845.6** <br><br> 4) **WRONGFUL DEATH - MEDICAL NEGLIGENCE** <br><br> **AND** <br><br> **DEMAND FOR JURY TRIAL** |

//

//

Plaintiffs complain and allege as follows:

## I. INTRODUCTION

1.     On June 7, 2022, DARIO CERAGIOLI (DARIO), a 62-year-old Butte Meadows resident, father, husband, and former professional sound engineer who had retired to BUTTE COUNTY due to multiple sclerosis (MS),[1] exhibited uncharacteristic erratic and violent behavior, the result of a medical psychosis that required immediate attention.[2]  A video recording from a cell phone shows DARIO naked in the middle of the roadway charging at logging trucks; neighbors are overheard saying DARIO "isn't going to make it through the day unless the Sheriff gets up here."  The Sheriff was called, and Sheriff's deputies were dispatched.  Butte County Sheriff's deputy JOSEPH GEORGE (GEORGE) noted that DARIO reported he was "a magician and an event is supposed to happen on Thursday" and that he was "hard to follow during my interview and he would make nonsensical statements referencing God, the bible and other ransom [*sic*] subjects."

2.     DARIO needed the Sheriff's deputies to protect him and get him medical attention; instead, they killed him.

---

[1] Originally from the Bay Area, in Dario's youth the Ceragioli family had a cabin the Butte Meadows. Most of Dario's adult life was spent in Tennessee and North Carolina, although he had been a sound engineer for traveling acts, including the Grateful Dead.  He was diagnosed with MS in the 1990s, but by 2013, it was clear he could no longer work, so Dario moved to back to the Butte Meadows area and fixed up a cabin. He and his wife, Elizabeth, met in the Butte Meadows area and married in 2016.

Before the incidents described herein, Dario was an active member of the community and had a strong relationship with his pastor, Dan Christian, at Mountain Joy Bible Fellowship.  Despite his persistent shakes, Dario helped neighbors move furniture and with various home improvement projects.

[2] On June 7th, Dario was running around his neighborhood naked, forced his way into a neighbor's house, threatened and physically assaulted her, and unclothed, first attempted to ride on another neighbor's ATV and then charged at logging trucks and attempted to assault the drivers.  Driven by an apparent psychotic religiosity, Dario was verbal but incoherent during these events.  Upon inspection of his residence, officers found incomprehensible "notes" he had written on paper towels which included references to God. There was no evidence or reports of recent drug or alcohol use, no history of psychosis, and this behavior was out of character.

3.      Electing not to take DARIO to the hospital for a medical evaluation, deputy GEORGE brought DARIO to BUTTE COUNTY's jail where he was placed in a jail cell; his medical needs neglected until he was found unresponsive on the floor of his cell six days later.  When officers pulled DARIO out of his cell, he was septic from an overwhelming bacterial infection, and in end-organ failure; his legs were cold to the touch, his skin was molted and bruised, and he smelt strongly of urine. Despite the efforts of physicians, DARIO died on June 16, 2022, survived by his wife ELIZABETH CERAGIOLI, daughter MARY CERAGIOLI who lived with DARIO in Butte Meadows, and his sons, JOSHUA CERAGIOLI, and ANTHONY CERAGIOLI.

4.      DARIO's death was the result of violations of his constitutional rights as follows:

5.      **<u>FIRST CONSTITUTIONAL VIOLATION:</u> No medical care was provided.**

6.      Once DARIO was taken into criminal custody at the jail, he had a constitutional right to appropriate medical evaluation, monitoring, and care.  Despite exhibiting florid psychosis, the two jail nurses assigned to DARIO, CRYSTAL COMER and TANYA ATKINSON, did not run any tests to determine whether there was a medical cause for DARIO psychosis,[3] consult with a psychiatrist to attempt to evaluate or stabilize him, or refer him to a local medical facility for medical clearance.  Had they done so, he would not have died.  CRYSTAL COMER and TANYA ATKINSON were acting within the course and scope of their employment at WELLPATH, a private-equity-owned business that

---

[3] There are a range of medical conditions that can cause sudden-onset psychosis of the type Dario exhibited.  Tintinalli's Emergency Medicine, 8th Edition published by the American College of Emergency Physicians advises:

Psychotic symptoms may be caused by numerous medical conditions, including infections, such as encephalitis, meningitis, or cystitis; CNS conditions such as stroke, seizure, Parkinson's disease, or brain tumor; and metabolic derangements such as hypoglycemia or hepatic encephalopathy.

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

describes itself as "one of the nation's largest for-profit healthcare providers for prisoners."[4]

7.     After DARIO was brought to the jail on June 7th, he was monitored for 24 hours to assess whether his psychosis was the result of drugs or alcohol.  Having neither improved nor died, CRYSTAL COMER noted that DARIO had "cleared sobering" in an evaluation conducted through a "docile window." There was no substantive interaction with medical staff for five days, from June 8th until June 13th, when DARIO was found motionless in his cell.

8.     This was not a constitutionally mandated assessment of DARIO's medical needs.

9.     **SECOND CONSTITUTIONAL VIOLATION: Jail staff neglected DARIO.**

10.     DARIO had not been charged with any crime by the District Attorney.  The Constitution forbids the cruel and unusual punishment of detainees.  To maintain a constitutionally humane jail environment, it is essential that sheriff's deputies regularly check the health of the inmates and respond accordingly.  We do not let people waste away in medieval dungeons.

11.     Based on a public records request, the last documented check of DARIO was on June 10th when social worker, PAMELA JOHANSEN, noted that "Inmate and cell dirty, unkempt . . . grinned broadly, made odd motion with his fingers then resumed cursing at the wall . . .[a]ppears to be responding to internal stimuli."  Given the disease which medical evidence shows was ravaging his body, it is medically improbable that DARIO's first sign of disease was three days later, when he was found motionless on the floor of his cell.  Within a reasonable degree of medical probability, there were early signs that DARIO's condition was degrading which would have been evident had anyone checked

---

[4] Previously known as "Correct Care Solutions," WELLPATH has been the subject of considerable negative media reports concerning deaths of individuals in their facilities.  A CNN Report, published June 25, 2019 (byline: Blake Ellis & Melanie Hicken), identified 70 wrongful death lawsuits.  The CNN reporters reviewed internal documents, medical records and autopsy reports and concluded "amid a focus on 'cost containment' and massive corporate growth, the company has provided substandard care that has led to death and other serious outcomes that could have been avoided."

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

on him.  The fact that earlier signs of his overwhelming infection were missed is evidence that deputies were not conducting constitutionally required wellness checks.

12.    **THIRD CONSTITUTIONAL VIOLATION: DARIO was not a criminal.**

13.    Under California Penal Code section 25, a person can only commit a crime if they can know or understand the nature and quality of their conduct or can distinguish right from wrong. Based on deputy GEORGE's notes at the time of DARIO's arrest, it was clear that DARIO could do neither.

14.    Without any basis to believe that DARIO had committed a crime, it was unconstitutional for deputy GEORGE to take DARIO into criminal custody.  The only authority officers had to take DARIO into custody was under Welfare and Institutions Code 5150, which provides for the civil detention of persons who are a danger to themselves or others for a "period of 72 hours for assessment, evaluation, and crisis intervention."  DARIO did not receive any *assessment, evaluation,* or *crisis intervention*.

15.    **FOURTH CONSTITUTIONAL VIOLATION: Deputy GEORGE misled a judge.**

16.    It is unconstitutional to hold a criminal suspect indefinitely without obtaining a valid order from a judge finding probable cause that the person committed a crime.  It is unconstitutional for an officer seeking a judicial warrant to deliberately or recklessly omit facts which are material to the judge's assessment of probable cause.

17.    DARIO's frank, florid, and unstable psychosis were material to whether there was probable cause to believe he had the mental state to commit a criminal offense, or just a sick person who needed medical care.  On June 7th, deputy GEORGE prepared a "Declaration of Probable Cause for Detention and Bail Setting" that was largely copied from the incident report he prepared earlier that day.  However, when he prepared his affidavit, GEORGE omitted the sections from his incident report which referenced DARIO's psychosis and psychotic behavior.

18.    After reviewing the half-story that deputy GEORGE put in his affidavit, Superior Court

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Judge Philip H. Heithhecker signed an order that allowed officers to hold DARIO in a jail cell: "On the basis of the foregoing declaration, I hereby determine that there is probable cause to believe the arrestee has committed a crime. The arrestee is ordered held in lieu of posting bail in the scheduled amount." Misled by deputy GEORGE's decision to omit DARIO's psychosis, Judge Heithhecker unwittingly participated in DARIO's unconstitutional jailing and ultimate death.

19.     Even if DARIO's family had known about DARIO's condition, the bail set at $179,000 by Judge Heithhecker was a significant impediment to DARIO accessing appropriate medical care.

* * *

20.     Far from DARIO's death being an isolated incident, based on documents obtained via public records request and court filings, The BUTTE COUNTY and SHERIFF KORY L. HONEA and their subordinates appear to regularly mistreat people with physical and mental illness with an unconstitutional indifference to their medical needs, safety and protection that results in significant injury and death:

a.     In an ongoing lawsuit, *Daniels v. Butte County, et al.*, (Cal. E.D. Case No.: 2:21-cv-0277) allegations describe 24-year-old Hugh Cannon Daniel's February 11, 2019 death under circumstances which are similar to what happened to DARIO. After deputies disregarded Daniels' complaints of feeling sick, Daniels was overwhelmed by infection and died.

b.     Even when people have called the BUTTE COUNTY Sheriff's office regarding people exhibiting psychosis, the sheriff's deputies have taken these people into criminal custody instead of a facility where they can be evaluated and treated. In September of 2017, Ramona Arell alleged she called deputies because her husband, Elmo, was exhibiting psychosis. He was taken to the jail where he was not able to use the medical equipment he used at home. His heart stopped and he slipped in a coma.

c.    On March 7, 2019, Clarence Beaver was beaten while he slept because an uncontrolled psychotic inmate had been placed in his cell instead of in an appropriate medical setting.

d.    On September 7, 2019, Delilah Ogarrio was not given her psychiatric medications and hung herself.

21.    Based on the number of people who disregarded DARIO's constitutional rights and the number of prior similar instances where other persons had been similarly mistreated, Plaintiffs have a good faith belief and hereby allege that WELLPATH, BUTTE COUNTY and SHERIFF KORY L. HONEA, in his individual capacity, affirmatively and through deliberate indifference to persons' constitutional rights created, maintained, ratified and were deliberately indifferent to policies and customs among their employees and subordinates that deprive arrestees with physical and mental illness of their constitutional rights.  DARIO's death and Plaintiffs' injuries were a proximate result of their deliberate indifference.

## II. JURISDICTION

22.    This Complaint seeks damages pursuant to Title 42 U.S.C. section 1983 and 1988, for violation of Plaintiffs' civil rights and violation of California state law.  Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343.  This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. section 1367.

## III. VENUE

23.    Plaintiffs' claims, alleged herein, arose in BUTTE COUNTY, California which is within the geographic jurisdiction of this Court.  Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(20).

//

//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**IV. PARTIES**

24.    DARIO CERAGIOLI died on June 16, 2022, and is survived by his wife, ELIZABETH CERAGIOLI, daughter, Plaintiff MARY CERAGIOLI, and two sons, JOSHUA CERAGIOLI, and ANTHONY CERAGIOLI, all of whom are United States Citizens.

25.    There are no known heirs or potential heirs to DARIO CERAGIOLI's estate who have not been joined in this action.

26.    ELIZABETH CERAGIOLI was married to DARIO CERAGIOLI and lived with him at the time of DARIO CERAGIOLI's death.  Accordingly, ELIZABETH CERAGIOLI is suing individually and as his Successor in Interest as follows:

a.    ELIZABETH CERAGIOLI has standing to bring survival actions under both state and federal law as DARIO CERAGIOLI's Successor in Interest pursuant to California Code of Civil Procedure §§ 377 *et seq.* and brings this survival action on behalf of DARIO CERAGIOLI's estate.  DARIO CERAGIOLI, deceased by and through ELIZABETH CERAGIOLI, as Successor in Interest, has standing to bring a survivorship action for his predeath pain and suffering and to recover punitive damages under 42 U.S.C. §§ 1983 and 1988 for the loss of a liberty interest under the Fourth and Fourteenth Amendments of the United States Constitution.  DARIO CERAGIOLI, deceased by and through ELIZABETH CERAGIOLI, as Successor in Interest, has a right to bring an action for DARIO CERAGIOLI's predeath pain and suffering and to recover punitive damages under to California Code of Civil Procedure § 377.34, and does so here.

b.    The declaration required under California Code of Civil Procedure § 377.32 for persons bringing an action as decedent's successor in interest is Attachment 1 to this Complaint.

c.    In losing her husband, ELIZABETH CERAGIOLI has standing to assert an

8

individual Federal claim under 42 U.S.C. §§ 1983 and 1988 for the loss of a liberty interest under the Fourteenth Amendment of the United States Constitution and does so here.

    d.    ELIZABETH CERAGIOLI also has a right to pursue a wrongful death action under California Code of Civil Procedure § 377.60 and does so here.

27.    Plaintiffs MARY CERAGIOLI, JOSHUA CERAGIOLI, and ANTHONY CERAGIOLI are the surviving children of DARIO CERAGIOLI and in losing their father have standing and do assert their personal claims under 42 U.S.C. §§ 1983 and 1988 for the loss of a liberty interest under the Fourteenth Amendment of the United States Constitution.  MARY CERAGIOLI, JOSHUA CERAGIOLI, and ANTHONY CERAGIOLI also have a right to pursue a wrongful death action under California Code of Civil Procedure § 377.60 and does so here.

28.    Defendant BUTTE COUNTY is a public entity established by the laws of the Constitution of the State of California, and owns, operates, manages, directs, and controls the Butte County Jail and the Butte County Sheriff's department, also a public entity, which employs the other defendants in this action.  Defendant BUTTE COUNTY is, and was at all times mentioned herein, responsible for the actions or inactions of its employees and agents, and the policies, procedures and customs/practices at the jail which led to and/or caused the violations alleged herein.  BUTTE COUNTY is within the Eastern District of California.

29.    Defendants WELLPATH, LLC, WELLPATH MANAGEMENT, INC., and WELLPATH PARTNERS, LLC, (WELLPATH) are Tennessee business entities doing business in the state of California.  Plaintiffs are ignorant of what role which WELLPATH entity has in the management, training, supervision, and operations of WELLPATH's operation at the Butte County Jail; however, Plaintiffs believe and hereby allege that the WELLPATH entities' business interests, ownership and management are so intertwined that they are each alter egos, partners and subsidiaries

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

and co-venturers for the purpose of the facts alleged herein.  In the context of this litigation, WELLPATH is a person.  WELLPATH provided medical services, including mental health services, in concert with and on behalf of the Butte County Jail and other defendants through a contract with BUTTE COUNTY.  As such, at all relevant times, WELLPATH was acting in the course and scope of that contract and under color of state law.

30.     Defendant SHERIFF KORY L. HONEA was employed by Defendant BUTTE COUNTY as Sheriff for BUTTE COUNTY.  At all relevant times, he was acting in the course and scope of that position and acting under color of state law.  He is being sued in his individual and official capacities.

31.     Defendant CASEY O'HERN is, and at all times relevant to this complaint, was a uniformed Sheriff's deputy employed by BUTTE COUNTY to work under the supervision of SHERIFF KORY L. HONEA who supervised and reviewed JOSEPH GEORGE's arrest of DARIO CERAGIOLI.  At all relevant times, he was acting in the course and scope of that position and acting under color of state law.  He is being sued in his individual and official capacities, and as an agent and employee of SHERIFF KORY L. HONEA and BUTTE COUNTY.

32.     Defendant JOSEPH GEORGE is, and at all times relevant for this complaint, was a uniformed Sheriff's deputy employed by BUTTE COUNTY to work under the supervision of SHERIFF KORY L. HONEA.  At all relevant times, he was acting in the course and scope of that position and acting under color of state law.  He is being sued in his individual and official capacities, and as an agent and employee of SHERIFF KORY L. HONEA and BUTTE COUNTY.

33.     Defendants CRYSTAL COMER and TANYA ATKINSON, at all relevant times, were registered nurses domiciled in the State of California, BUTTE COUNTY employed by WELLPATH to provide constitutionally mandated medical evaluations and care on behalf of BUTTE COUNTY and SHERIFF KORY L. HONEA at the Butte County Jail.  At all relevant times, they were acting in the course and scope of their position and acting under color of state law. They are being sued in their

individual and official capacities, and as agents and employees of WELLPATH, SHERIFF KORY L. HONEA and BUTTE COUNTY.

34.    Defendant PAMELA JOHANSEN, at all relevant times, was a Licensed Clinical Social Worker acting as an agent and/or employee of BUTTE COUNTY acting in the course and scope of their position and acting under color of state law.

35.    The true names and capacities, whether individual, corporate, partnership, joint venture, or otherwise of Defendants DOEs 1 through 60 inclusive, are unknown to Plaintiffs who therefore sue Defendants by such fictitious names; and leave of court will be asked to amend this complaint to show their true names and capacities when the same have become ascertained.

36.    Each of the Defendants named here as a DOE is legally responsible in some manner for the events and happenings referred to herein, and proximately and legally caused injury and damage to plaintiffs as alleged here. Plaintiffs pray leave to amend this complaint when their true names have been ascertained.

37.    At all times mentioned herein, defendants, DOEs 1 through 25, inclusive, and each of them, were the agents, servants, and employees of the other Defendants, and at all times herein mentioned, were acting within the course and scope of their agency and employment with said principal and/or employer.

38.    At all times mentioned herein, the defendants DOEs 26 through 40, inclusive, and each of them, were the co-joint-venturers, masters, and employers of the remaining Defendants, and each of them, who, at all times mentioned herein, were acting within the course and scope of their agency, employment and/or joint venture.

39.    DOE 41 was an employee of WELLPATH, and the designated Program Director of Medical Services at the Butte County Jail as specified by Title 15 of the California Administrative Code. The true name and identity of defendant DOE 41 is presently unknown to Plaintiffs. At all

relevant times, Defendant DOE 41 was acting in the course and scope of his/her employment and under color of state law and is being sued in his/her individual capacity. Plaintiffs will seek to amend this Complaint as soon as the true name and identity of DOE 41 is ascertained.

40.     DOE 42 was an employee of WELLPATH, and the designated Responsible Physician at the Butte County Jail as specified by Title 15 of the California Administrative Code. The true name and identity of defendant DOE 42 is presently unknown to Plaintiffs. At all relevant times, Defendant DOE 42 was acting in the course and scope of his/her employment and under color of state law and is being sued in his/her individual capacity. Plaintiffs will seek to amend this Complaint as soon as the true name and identity of DOE 42 is ascertained.

41.     DOE 43 was an employee of WELLPATH, and the designated Mental Health Program Director at the Butte County Jail as specified by Title 15 of the California Administrative Code. The true name and identity of defendant DOE 43 is presently unknown to Plaintiffs. At all relevant times, Defendant DOE 43 was acting in the course and scope of his/her employment and under color of state law and is being sued in his/her individual capacity. Plaintiffs will seek to amend this Complaint as soon as the true name and identity of DOE 43 is ascertained.

42.     DOEs 44-46 were employees of WELLPATH and were responsible for the promulgation and/or adoption of the medical/mental health policies and procedures and/or permitted the customs/practices pursuant to which the acts and/or omissions alleged herein were committed. The true names and identities of defendant DOEs 44-46 are presently unknown to Plaintiffs. At all relevant times, Defendant DOEs 44-46 were acting in the course and scope of their employment and under color of state law and are being sued in their individual and/or official capacities. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of DOEs 44-46 are ascertained.

43.     DOEs 47-50 were employees of WELLPATH and were responsible for the supervision, training and discipline of the individually named WELLPATH defendants and DOEs 51-60. The true

names and identities of DOEs 47-50 are presently unknown to Plaintiffs. These DOE defendants were acting in the course and scope of their employment, under color of state law and are being sued individually. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of DOEs 47-50 are ascertained.

44.    DOEs 51-60 were employees of WELLPATH who provided medical/mental health services and/or functions relating to decedent at the Butte County Jail. These DOE defendants were acting in the course and scope of their employment, under color of state law and are being sued individually. Plaintiffs will seek to amend this Complaint as soon as the true names and identities of DOEs 51-60 are ascertained.

45.    Plaintiffs are informed and believe that at all times mentioned herein, certain of the Defendant DOEs are the successors in interest to each of the remaining Defendants and on that basis, are liable for any act, or omission of said Defendants alleged here.

46.    At all times mentioned herein, Defendants, and each of them, were the agents and employees of the remaining Defendants and were at all times acting within the course and scope of said agency and employment.

47.    The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practice, and procedures of the BUTTE County Sheriff's Department, and/or BUTTE COUNTY and/or WELLPATH as permitted, interpreted, implemented, and ratified by SHERIFF KORY L. HONEA and WELLPATH.

## V. EXHAUSTION OF PRE-LAWSUIT PROCEDURES

48.    Plaintiffs submitted a California Government Code 910 *et seq.* claim to BUTTE COUNTY on December 7, 2022, which was rejected on December 20, 2022.

//

//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

# VI. COMMON LIABILITY ALLEGATIONS

49.     This case arises out of the improper incarceration, care and medical treatment of DARIO CERAGIOLI that began on or about June 7, 2022, when DARIO CERAGIOLI was held as a pretrial detainee in the Butte County Jail as described above.

50.     As a proximate result of Defendants' misconduct, DARIO CERAGIOLI died on June 16, 2022, from an overwhelming infection.

51.     As a proximate result of Defendants' misconduct, DARIO CERAGIOLI and Plaintiffs suffered injury including but not limited to the following:

a.      DARIO CERAGIOLI suffered considerable emotional distress, pain and discomfort as a result of his neglect between June 7, 2022 and his death;

b.      DARIO CERAGIOLI lost his life;

c.      Plaintiffs and/or DARIO CERAGIOLI's estate incurred burial and funeral expenses;

d.      Plaintiffs were deprived of DARIO CERAGIOLI's services (including household services), advice, training, love, companionship, comfort, affection, support, society, solace, moral support and DARIO CERAGIOLI's contribution to Plaintiffs' household and well-being; these losses constitute the loss of a liberty interest under the Fourteenth Amendment.

## VII. CAUSES OF ACTION

### COUNT ONE
### (42 USC § 1983)
### Fourth And Fourteenth Amendments – Personal Capacity
### Against All Defendants

Plaintiffs, for a first cause of action, allege against all Defendants:

52.     Plaintiffs incorporate by reference paragraphs 1 to 51 above, as though fully set forth

herein.

53.    Defendants acting under the color of state law in their individual and personal capacities, deprived DARIO CERAGIOLI of the rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, to not be deprived of life or liberty without due process of law, and to be free from cruel and unusual punishment, by holding him without just cause, subjecting him, or through their own deliberate indifference allowing others to subject him to, neglect, and a delay and denial of access to medical care for a serious but treatable medical condition, leading to his death.

54.    As a result of Defendants' unjustified detention and deliberate indifference to DARIO CERAGIOLI's need for medical care and treatment, and their disregard and ignoring of said conditions, DARIO CERAGIOLI suffered damages, pain and suffering, anxiety, confusion, disorientation, loss of life and deprivation of his constitutional rights in an amount not yet ascertained but to be proven.

55.    By the actions and omissions described above, Defendants violated 42 U.S.C. § 1983, depriving DARIO CERAGIOLI and Plaintiffs of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to U.S. Constitution:

a.    DARIO CERAGIOLI's right to be free from seizure in the form of criminal detention without a candid and complete showing to a judicial officer that there was probable cause that he had committed a criminal offense, as secured by the Fourth and Fourteenth Amendments;

b.    DARIO CERAGIOLI's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee as secured by the Fourth and Fourteenth Amendments;

c.    The right of DARIO CERAGIOLI and Plaintiffs to be free from wrongful

government interference with familial relationships, and right to companionship, society, and support, as secured by the Fourth and Fourteenth Amendments; and

d.      The right of DARIO CERAGIOLI's wife and children to a liberty interest in a family relationship with DARIO as well as to his to future support, love, care, comfort, affection, society, presence, companionship, protection, and, as to ELIZABETH CERAGIOLI, deprived of consortium.

56.     Defendants subjected DARIO CERAGIOLI and Plaintiffs to their wrongful conduct, depriving them of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard and deliberate indifference to whether the rights and safety of DARIO CERAGIOLI and his family would be violated by their acts and/or omissions.

57.     As a direct and proximate result of the Defendants' conduct, DARIO CERAGIOLI suffered injuries and damages as alleged herein and to which his Successor in Interest is entitled to recover survival damages, including predeath pain and suffering, according to proof.

58.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, DARIO CERAGIOLI, and the remaining Plaintiffs sustained injuries and damages as set forth above and are entitled to recover damages according to proof.

59.     The conduct of Defendants (excluding BUTTE COUNTY) entitles Plaintiffs to an award of exemplary and punitive damages according to proof and allowable under 42 U.S.C. § 1983, Cal. Code of Civil Procedure § 377.34 et seq., and other state and federal law.

60.     From all Defendants, Plaintiffs are also entitled to reasonable costs and attorney fees under 42 U.S.C. § 1988 and applicable federal and California codes and laws.

//

//

//

**COUNT TWO**

**42 U.S.C. § 1983**
**Fourteenth Amendment – Supervisory Liability Against Wellpath,**
**Sheriff Kory L. Honea, Casey O'Hern And DOEs 1-60**

Plaintiffs, for a second cause of action, allege against WELLPATH, SHERIFF KORY L.

HONEA, CASEY O'HERN and DOEs 1-60:

61.    Plaintiffs incorporate by reference paragraphs 1 to 60 above, as though fully set forth

herein.

62.    On or before June 7, 2022, Defendants WELLPATH, SHERIFF KORY L. HONEA,

CASEY O'HERN, and DOEs 1-60 failed to properly train, assign, supervise, and guide their staff on

when probable cause exists for a criminal seizure, and on the necessity of candor and completeness in

the application for a judicial order to hold a person on probable cause.

63.    On or before June 7, 2022, Defendants WELLPATH, SHERIFF KORY L. HONEA,

CASEY O'HERN, and DOEs 1-60 failed to properly train, assign, supervise, and guide their staff and

medical personnel at the Butte County Jail and at the Butte County Sheriff's Department, to take

necessary measures to ensure the health and safety of arrested persons and to ensure that they are

provided with all necessary monitoring and medical care.

64.    On or about June 7, 2022, and for some time prior thereto and since that time, Defendants

WELLPATH, SHERIFF KORY L. HONEA, CASEY O'HERN, and DOEs 1-60 have either

participated in, known of, or have been willfully ignorant of their subordinates' deliberate indifference

to the constitutional mandate that a person in custody be provided with all necessary monitoring and

medical care to protect his or her health and safety. WELLPATH, SHERIFF KORY L. HONEA,

CASEY O'HERN, and DOEs 1-60's knowledge or constructive knowledge of the shortcomings of

their subordinates was either based on their review of their own subordinates' conduct, or their willful

ignorance of their subordinates' capacities, abilities, customs, and practices.  Defendants' failure to

remedy these shortcomings in their subordinates' conduct constitutes their own deliberate indifference.

65.     Furthermore, on or before June 7, 2022, defendants WELLPATH, SHERIFF KORY L. HONEA, CASEY O'HERN, and DOEs 1-60 failed to properly supervise the medical services for arrestee-prisoners, in that Butte County Jail personnel were not trained to properly seek medical clearance for psychotic arrestees or monitor pretrial detainees suffering from health conditions, including mental health conditions, failed to provide appropriate care to pretrial detainees for serious but treatable medical conditions, and operated without adequate safeguards, audits, or reporting requirements reviewable by supervisors.

66.     Additionally, as policy making officials for BUTTE COUNTY, defendants WELLPATH, SHERIFF KORY L. HONEA, CASEY O'HERN, and DOEs 1-60 were responsible for BUTTE COUNTY's unconstitutional customs, policies, practices, and procedures, as well as failures to properly hire, train, instruct, monitor, supervise, evaluate, investigate, manage, and discipline, as described above, and they ratified the misconduct and constitutional violations as described above.

67.     Said acts and omissions, customs, and practices by WELLPATH, SHERIFF KORY L. HONEA, CASEY O'HERN, and DOEs 1-60 set in motion a series of acts by their subordinates that they knew or must have known would cause their subordinates to deprive arrestees of their constitutional rights.

68.     As a direct and proximate result of the actions, omissions, and practices of defendants WELLPATH, SHERIFF KORY L. HONEA, CASEY O'HERN, and DOEs 1-60, as described above, Plaintiffs sustained serious and permanent injuries and are entitled to damages, costs, and attorney fees as set forth above.

69.     The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the DARIO CAREGIOLI, thereby entitling Plaintiffs to an award of exemplary and punitive damages according to

proof.

## COUNT THREE

**(Cal. Govt. Code § 845.6)**
**Failure To Furnish/Summon Medical Care Against Defendants Butte**
**County, Wellpath, Joseph George, Tanya Atkinson, Pamela Johansen,**
**Crystal Comer And DOEs 1-60**

Plaintiffs, for a third cause of action, allege against BUTTE COUNTY, WELLPATH, TANYA

ATKINSON, PAMELA JOHANSEN and CRYSTOL COMER and DOEs 1-60:

70.   Plaintiffs incorporate by reference paragraphs 1 to 69 above, as though fully set forth

herein. Defendants had reason to know that DARIO CERAGIOLI needed immediate medical care for

his psychiatric emergency and Defendants failed to take reasonable action to summon such medical

care or prevent that care which resulted in decedent's death and was a violation of California State Law

and specifically Cal. Government Code § 845.6. This conduct proximately caused damage and injuries

to decedent and Plaintiffs. BUTTE COUNTY is vicariously liable for the conduct of the individually

named Defendants it employed at the time of the Incident. The actions of the individually named

Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiffs'

rights, thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof

and as permitted by law.

## COUNT FOUR

**(Cal. State Law)**
**Wrongful Death – Medical Negligence Against Defendants Butte**
**County, Wellpath, Tanya Atkinson, Crystal Comer And DOEs 1-60**

Plaintiffs, for a fourth cause of action, allege against BUTTE COUNTY, WELLPATH, TANYA

ATKINSON and CRYSTOL COMER and DOEs 1-60:

71.   Plaintiffs incorporate by reference paragraphs 1 to 70 above, as though fully set forth

herein.

72.     Defendants against whom this cause of action is alleged are private parties, public employees, and public agencies who were lawfully engaged in the practice of one of the healing arts and/or operated a custodial facility in which persons are entitled to medical treatment and each of them had assumed responsibility for the medical care and supervision of DARIO CERAGIOLI.

73.     By virtue of the foregoing, Defendants, and each of them, owed a duty of ordinary care to DARIO CERAGIOLI, to use that degree of care and skill that a reasonably prudent person and/or facility would use given the Defendants' respective role, function, knowledge, training, expertise and skill and to exercise prudent, reasonable judgment and care in the selection, employment and control of qualified, trained, experienced nurses, nurse practitioners, nursing personnel, orderlies, assistants, aides and employees under their supervision, control, direction, responsibility and authority while performing services and caring for persons within the custody of BUTTE COUNTY including, but not limited to, DARIO CERAGIOLI.

74.     The medical treatment and monitoring provided by Defendants, and each of them, and by Defendants' employees, and each of them, to DARIO CERAGIOLI, negligently failed to conform to the standard of care both with respect to the care and treatment rendered to DARIO CERAGIOLI, and with respect to providing DARIO CERAGIOLI with information about the risks, hazards, or other harmful consequences, that might follow from the treatment and diagnosis that Defendants, and each of them, planned for DARIO CERAGIOLI.

75.     At all times herein mentioned, Defendants negligently and carelessly failed to properly verify the character, quality, ability, and competence of individuals, including the remaining Defendants, and each of them, treating patients in said hospital, custodial facility, and clinics, and as a proximate result thereof, DARIO CERAGIOLI died.

76.     Before, during, and after said times, Defendants, and each of them, so negligently treated, and so negligently cared for DARIO CERAGIOLI while he was under their care, and so negligently

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

operated, managed, maintained, selected, designed, controlled, and conducted their services, activities, personnel and equipment in connection with DARIO CERAGIOLI's care and treatment that the same proximately caused DARIO CERAGIOLI's death.

77.    Defendants and each of them breached the aforesaid duty of care by:

     a.    Failing to provide DARIO CERAGIOLI with appropriate mental health care;

     b.    Failing to take adequate measures to prevent DARIO CERAGIOLI from injuring himself, including, but not limited to, assessing the potential medical causes of his psychosis;

     c.    Failing to monitor DARIO CERAGIOLI's physical health to ensure he was not ill or degrading.

78.    As a direct and legal result of the foregoing, DARIO CERAGIOLI was injured in his health and sustained personal injury leading to his death, and Plaintiffs, and each of them, incurred economic and non-economic damages including, but not limited to, the loss of DARIO CERAGIOLI's care, comfort, support, and society.

79.    As a further and direct result of the foregoing, DARIO CERAGIOLI required extensive medical care and incurred medical expenses in a sum according to proof at trial.

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## VIII. PRAYER FOR RELIEF

Plaintiffs pray judgment against Defendants, and each of them, as follows:

1. For noneconomic damages according to proof at time of trial;

2. For economic damages according to proof at time of trial;

3. For any exemplary, punitive and/or statutory damages allowable by law;

4. For costs of suit herein;

5. For prejudgment interest;

6. For attorneys' fees; and

7. For such other and further relief as the Court may deem just and proper.

DATED:  June 12, 2023   MITCHELL LEEDS, LLP


By:_____
   Nathaniel M. Leeds
   Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on each and all of the causes of action set forth in this Complaint.

DATED:  June 12, 2023   MITCHELL LEEDS, LLP


By:_____
   Nathaniel M. Leeds
   Attorneys for Plaintiffs

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**ATTACHMENT 1**

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Jeffrey Mitchell, Esq. (SBN: 188751)
jeff@mitchelllawsf.com
Nathaniel M. Leeds, Esq. (SBN: 246138)
nathaniel@mitchelllawsf.com
MITCHELL LEEDS, LLP
290 7th Avenue
San Francisco, CA 94118
Tel: (415) 702-9928
Fax: (415) 276-9099

Attorneys for Plaintiffs,
DARIO CERAGIOLI, deceased by and through ELIZABETH CERAGIOLI, as Successor in Interest, ELIZABETH CERAGIOLI in her personal capacity, MARY CERAGIOLI, ANTHONY CERAGIOLI, and JOSHUA CERAGIOLI

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIO CERAGIOLI, deceased by and through ELIZABETH CERAGIOLI, as Successor in Interest, ELIZABETH CERAGIOLI in her personal capacity, MARY CERAGIOLI, ANTHONY CERAGIOLI, and JOSHUA CERAGIOLI,<br><br>             Plaintiffs,<br><br>    v.<br><br>BUTTE COUNTY, a municipal corporation; Sheriff KORY L. HONEA, individually and in his official capacity as Sheriff of BUTTE COUNTY, CASEY O'HERN, JOSEPH GEORGE, CRYSTAL COMER, TANYA ATKINSON, PAMELA JOHANSEN and WELLPATH, LLC, WELLPATH MANAGEMENT, Inc., WELLPATH PARTNERS, LLC. and Does 1 through 60, inclusive,<br><br>             Defendants. | NO.<br><br>**DECLARATION BY PERSON BRINGING THIS ACTION DECEDENT'S SUCCESSOR IN INTEREST** |

///

///

SDFSDFSDF

1

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Pursuant to California Code of Civil Procedure § 377.32, Plaintiffs submit this declaration in support of bringing this action as decedent's successor in interest.

I, Elizabeth Ceragioli, declare as follows:

1. The claims in this action arise out of the death of decedent, Dario Ceragioli.

2. Dario Ceragioli died on June 16, 2022 in Butte County.

3. No proceeding is now pending in California for administration of decedent's estate.

4. There was no administration of decedent's estate.

5. Declarant, Elizabeth Ceragioli, is the decedent's wife and successor in interest pursuant to California Code of Civil Procedure section 377 *et seq.* and brings this survival action on behalf of decedent's estate.

6. No other person has a superior right to commence this action or proceeding or to be substituted for decedent in the pending action or proceeding.

7. A copy of Dario Ceragioli's pending death certificate is attached hereto.

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify as to the matters set forth herein.  Executed this 6th of June, 2023 in Butte Meadows, California.


_Elizabeth Ceragioli_
Elizabeth Ceragioli, Declarant

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF BUTTE

**155 NELSON AVENUE**
**OROVILLE, CALIFORNIA 95965**

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV. 2/06)

3052022150930
STATE FILE NUMBER

3202204001234
LOCAL REGISTRATION NUMBER

**AMENDED**
1 OF 2

### DECEDENT'S PERSONAL DATA

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| DARIO | ANTHONY | CERAGIOLI |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE YRS. | IF UNDER ONE YEAR – Months / Days | IF UNDER 24 HOURS – Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| 1960 | 62 | | | M |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP at Time of Death | 7. DATE OF DEATH mm/dd/ccyy | 9. HOUR (24 Hours) |
|---|---|---|---|---|---|
| CA | | ☐ YES ☒ NO ☐ UNK | MARRIED | 06/16/2022 | 0059 |

| 13. EDUCATION – Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? ☐ YES ☒ NO | 16. DECEDENT'S RACE – Up to 3 races may be listed |
|---|---|---|
| 09 | | CAUCASIAN |

| 17. USUAL OCCUPATION – Type of work for most of life, DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY | 19. YEARS IN OCCUPATION |
|---|---|---|
| SOUND ENGINEER | MUSIC | 35 |

### USUAL RESIDENCE

| 20. DECEDENT'S RESIDENCE (Street and number, or location) |
|---|
| 7601 HUMBOLDT ROAD |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| BUTTE MEADOWS | BUTTE | 95942 | 6 | CA |

### INFORMANT

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS |
|---|---|
| ELIZABETH ANN CERAGIOLI, WIFE | 7601 HUMBOLDT ROAD, BUTTE MEADOWS, CA 95942 |

### SPOUSE/SRDP AND PARENT INFORMATION

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| ELIZABETH | ANN | KAISER |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| RAY | JOHN | CERAGIOLI | CA |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| ELIZABETH | JEAN | STEIDLMAYER | CA |

### FUNERAL DIRECTOR / LOCAL REGISTRAR

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 07/01/2022 | RESIDENCE OF ELIZABETH CERAGIOLI 7601 HUMBOLDT ROAD, BUTTE MEADOWS, CA 95942 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CREMATE/RESIDENCE | ▸ NOT EMBALMED | |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| BRUSIE FUNERAL HOME | FD371 | ▸ DAVID CANTON D.O. | 06/29/2022 |

### PLACE OF DEATH

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| OROVILLE HOSPITAL | ☒ IP ☐ ER/OP ☐ DOA | ☐ Hospice ☐ Nursing Home/LTC ☐ Decedent's Home ☐ Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| BUTTE | 2767 OLIVE HWY | OROVILLE |

### CAUSE OF DEATH

| 107. CAUSE OF DEATH | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) | PENDING | UNK | ☒ YES ☐ NO |
| Sequentially, list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) | | | 22-04001 |
| (C) | | | 109. BIOPSY PERFORMED? ☐ YES ☒ NO |
| (D) | | | 110. AUTOPSY PERFORMED? ☒ YES ☐ NO |
| | | | 111. USED IN DETERMINING CAUSE? ☒ YES ☐ NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NO | ☐ YES ☒ NO ☐ UNK |

### PHYSICIAN'S CERTIFICATION

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since (A) mm/dd/ccyy   Decedent Last Seen Alive (B) mm/dd/ccyy | | | |
| | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | | |

### CORONER'S USE ONLY

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH ☐ Natural ☐ Accident ☐ Homicide ☐ Suicide ☒ Pending Investigation ☐ Could not be determined | 120. INJURED AT WORK? ☐ YES ☐ NO ☐ UNK | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ▸ PAT MCNELIS | 06/29/2022 | PAT MCNELIS, DEP CORONER |

### STATE REGISTRAR

| A | B | C | D | E | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|

**\* 000364713 \***

## CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF BUTTE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Butte County Clerk-Recorder.

**DATE ISSUED** APR 17 2023



KEATON DENLAY
COUNTY CLERK-RECORDER

This copy is not valid unless prepared on engraved border, displaying the date, seal and signature of the County Clerk-Recorder.
PRNCO (Rev) 08/22

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# STATE OF CALIFORNIA

## CERTIFICATION OF VITAL RECORD

# COUNTY OF BUTTE

### 155 NELSON AVENUE
### OROVILLE, CALIFORNIA 95965

### PHYSICIAN/CORONER'S AMENDMENT
NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

3052022150930
STATE FILE NUMBER

1.1

3202204001234
LOCAL REGISTRATION NUMBER

☐ BIRTH  ☒ DEATH  ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

AMENDMENT

2 OF 2

## PART I  INFORMATION TO LOCATE RECORD

| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 1A. NAME—FIRST DARIO | 1B. MIDDLE ANTHONY | 1C. LAST CERAGIOLI | 2. SEX M |
|---|---|---|---|---|
| | 3. DATE OF EVENT—MM/DD/CCYY 06/16/2022 | 4. CITY OF EVENT OROVILLE | 5. COUNTY OF EVENT BUTTE | |

## PART II  STATEMENT OF CORRECTIONS

| LIST ONE ITEM PER LINE | 6. CERTIFICATE ITEM NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| | 107A | PENDING | MIXED STREPTOCOCCUS PNEUMONIAE AND STAPHYLOCOCCUS SEPSIS |
| | 107AT | UNK | DYS |
| | 112 | – | ATHEROSCLEROTIC AND HYPERTENSIVE CARDIOVASCULAR DISEASE |
| | 113 | NO | UNK |
| | 119 | PENDING INVESTIGATION | NATURAL |

| DECLARATION OF CERTIFYING PHYSICIAN OR CORONER | I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. | | |
|---|---|---|---|
| | 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER ▶ PAT MCNELIS | 10. DATE SIGNED—MM/DD/CCYY 11/22/2022 | 11. TYPED OR PRINTED NAME AND TITLE/DEGREE OF CERTIFIER PAT MCNELIS, DEPUTY CORONER |
| | 12. ADDRESS—STREET and NUMBER 5 GILLICK WAY | 13. CITY OROVILLE | 14. STATE CA  15. ZIP CODE 95965 |
| STATE/LOCAL REGISTRAR USE ONLY | 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR ▶ CDPH-VR | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY 11/23/2022 | |

STATE OF CALIFORNIA, DEPARTMENT OF PUBLIC HEALTH, OFFICE OF VITAL RECORDS

FORM VS.24Ae (REV. 1/08)

1.1



\* 0 0 0 3 6 4 7 1 8 \*

### CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF BUTTE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Butte County Clerk-Recorder.

DATE ISSUED  APR 1 7 2023

This copy is not valid unless prepared on engraved border, displaying the date, seal and signature of the County Clerk-Recorder.
PBRCO-2 (Rev) 08/22



KEATON DENLAY
COUNTY CLERK-RECORDER



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE